**REDMOND, Plaintiff-Appellant, v. REPUBLIC STEEL CORP., etc., Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23588.   Decided January 26, 1956.

198

Harrison, Spangenberg & Hull, Craig Spangenberg, of Counsel, for plaintiff-appellant.

Arter, Hadden, Wykoff & Van Duzer, Smith Warder, of Counsel, for defendant-appellee.

## OPINION

By KOVACHY, PJ.

This is an appeal on questions of law from a judgment entered for the defendant-appellee in Common Pleas Court at the close of plaintiff's case.

The defendant, The Republic Steel Corp., contracted with the Schweizer Dipple Company, a pipe and plumbing concern, for some pipe work in its building known as No. 2 Warehouse by writing out a "Purchase Order" on one of its standard purchase order forms as follows:

| "REPUBLIC STEEL CORPORATION and Subsidiary Companies Purchasing Department Republic Building Cleveland 1, Ohio | PURCHASE ORDER No. KE-17306-M-00 Date: Apr. 17, 1951 Delivery in Progress |
|---|---|
| The Schweizer Dipple Company 2161 E. 16th Place Cleveland, Ohio. | F. O. B. OW Terms NET CASH |
| Please enter our order subject to terms and conditions on face and reverse side hereof. Acknowledge receipt of order. State shipping date. Our order number must appear on invoices, B/L's, packages and correspondence. Address Communications to: J. A. McEwen LG | Quotation: Letter 3-1-51 |

| Our Item No. | Quantity | Description | Price |
|---|---|---|---|

SUPERVISION, LABOR, TOOLS AND EQUIPMENT TO BE MISCELLANEOUS PIPE WORK FOR THE EXPANSION PROGRAM AS REQUESTED BY MR. A. J. DELANY. ALL CHARGES TO BE RENDERED IN AC-

CORDANCE WITH CARD OF ACCOUNTS WHICH FIELD ENGINEERS WILL HAND TO CONTRACTOR.
MATERIALS TO BE FURNISHED BY REPUBLIC STEEL CORP. HOWEVER, ANY MISCELLANEOUS MATERIALS ACTUAL COST PLUS 10%.
REPUBLIC STEEL CORP TO PAY THE CONTRACTOR THE ACTUAL COST OF ALL LABOR USED AT JOB SITE EXCEPT THE COST OF GENERAL SUPERINTENDENT AND MAIN OFFICE        SEE BODY SUPERVISION.                                                  OR ORDER
TO THE ABOVE LABOR COST WILL BE ADDED THE FOLLOWING PERCENTAGE FEE.

Continued on SHEET 2.

---

SHIP TO
  REPUBLIC STEEL CORPORATION
  SEE BODY OR ORDER
  CLEVELAND DISTRICT                          5700

  CLEVELAND OHIO.

---

REPUBLIC STEEL CORP.
and Subsidiary Companies

s/ F. J. LASKEY

---

Manager of Purchases and
Raw Materials

REPUBLIC STEEL CORPORATION              Sheet No. 2.
                                       Order No. KE-17306-M-00
PURCHASE ORDER CONTINUATION SHEET      Date Apr. 17, 1951
                                       Vendor: Schweizer Dipple
                                               Company.

---

| Quantity | Description | Price |
|---|---|---|

FIRST $200,000.00
OVER $200,000.00 TO $300,000.00
OVER $300,000.00 to $400,000.00
OVER $400,000.00
FOR THE ABOVE FEES CONTRACTOR WILL FURNISH A FULL TIME JOB SUPERINTENDENT.
PAY ALL WORKMENS COMPENSATION AND INSURANCE.
FURNISH ALL TOOLS EXCEPT AS NOTED BELOW.
FURNISH JOB OFFICE.
PROVIDE MAIN OFFICE SUPERVISION AND MAINTAIN JOB RECORDS.
IT IS UNDERSTOOD REPUBLIC STEEL CORP. WILL FURNISH ALL RIGGING EQUIPMENT, CRANES, OR EXCAVATING MACHINES REQUIRED.
REPUBLIC STEEL CORP WILL ALSO FURNISH CATWALKS OR LUMBER FOR CATWALKS SCAFFOLDING WHERE REQUIRED.
CONFIRMING ORDER 4-3-51 TO MR. J. DIPPLE
    DO NOT DUPLICATE
COPY OF OUR S. D. ORDER No. 18 is ATTACHED AND MUST BE FOLLOWED IN THE PERFORMANCE OF THIS WORK. DETACH AND RETURN THE ACKNOWLEDGMENT PORTION AT ONCE.

FOR SALES OR USE TAX PURPOSE
FINAL OR COMPLETE INVOICE MUST SHOW LABOR AND MATERIALS SEPARATE. INVOICE MUST INDICATE IF PARTIAL OR COMPLETE. IN STATE OF OHIO ONLY TAX WILL BE PAID DIRECT BY PURCHASER. BY ADDITIONAL WORK OVER THAT SPECIFIED HEREIN TO BE PERFORMED WITHOUT APPROVAL FROM THE PURCHASING DEPARTMENT. INVOICE MUST SHOW WHETHER PARTIAL OR COMPLETE.

SUBJECT TO TERMS AND CONDITIONS SHOWN ON SHEET ONE OF THIS ORDER."

\* \* \* \* \*

In addition, Schweizer Dipple signed the following acknowledgment: "PURCHASING DEPARTMENT                    Date: 4-18-51

This will acknowledge receipt of General Safety Order No. 18— 'Rules Governing Contractors and Their Employees,' and we agree to comply with these and the Safety Rules of the Disitrict or Plants in which our employees work. We also agree to place a copy of this Safety Order and instructions in the hands of the person responsible for the work to be done.

(Signed)      J. I. Dipple
_____
                  Vice-President
_____
                  (Title)
                  The Schweizer Dipple Co.
_____
                  (COMPANY)

             J. A. M.
Purchase
   Order No. K. E.-17306-M-00"

Plaintiff, Ralph E. Redmond, an employe of Schweizer Dipple, was injured when an overhead crane was operated too hard into the bumpers at the end of the elevated rails on which it ran. The defendant, in its opening statement, admitted that the operator of the crane was negligent at the time.

The crane was a permanent fixture of the warehouse and moved up and down the length of the building. Schweizer Dipple built a scaffold above the lifting mechanism atop the movable portion of the crane. Since the hoisting mechanism itself could be moved back and forth over the whole traverse of the crane, the scaffolding was movable to any position in the area enclosed within the runway. This enabled the workers of Schweizer Dipple to hang pipe runs from the overhead roof trusses of the building, some sixty feet above the ground, as required by the defendant. The crane was operated by an employee of the defendant. An employee of Schweizer Dipple, however, directed him in its movement by signals by means of which the scaffolding was placed where needed by the working crew. In addition, Schweizer Dipple, in conformance with Rule 15 of General Safety Order No. 18, had a safety man stationed on the crane to pull the main power switch to prevent any movement whatever of the crane while the men worked.

The evidence further indicated that Schweizer Dipple had no choice

as to the person operating the crane; that different persons came to operate it from time to time, that Schweizer Dipple did not control the manner in which the crane was operated when responding to its directions; that Schweizer Dipple had no right to remove the operator; that Schweizer Dipple's only recourse, if dissatisfied with the operation of the crane, was to refuse to permit its men to continue with the work; that the operator was at all times on defendant's payroll; that the defendant had the sole right to remove or discharge the operator; and that the defendant did discharge the operator after the accident.

The trial court directed the jury, trying the case, to return a verdict in favor of the defendant at the close of plaintiff's evidence and entered judgment thereon. It did so on the authority of paragraph one of the syllabus in **Scharf, Admr. v. Cartage Company, 95 Oh Ap 153.** The plaintiff claims that the trial court committed prejudicial error in so doing.

The question before us is this:—Was the crane operator, though the general employee of the defendant, loaned to Schweizer Dipple under Schweizer Dipple's sole direction and control to help Schweizer Dipple do its work, for whose negligence the defendant could not be held liable, or was he at all times furthering the work of the defendant and under defendant's control, making the defendant liable for his negligence under the doctrine of respondeat superior?

The answer to this question is to be found, we believe, in the relationship of Schweizer Dipple and the defendant during this undertaking as disclosed by the "purchase order" which represented the only contract between them.

To understand the nature and meaning of this document, it must be kept in mind that the defendant was a functioning concern, equipped with workers and tools, and was, itself, directing the expansion program in its plant. The caption of this order makes it plain that the defendant was **purchasing** a type of specialized labor. The defendant agreed to pay the actual cost of the labor performed, plus a percentage fee, on a sliding scale, to cover supervision, overhead, workmen's compensation insurance, tools, with noted exceptions, and job records. Significantly, the defendant specified that it would furnish the materials and all rigging equipment, cranes, or excavating machines required and also catwalks or lumber for catwalks, scaffolding where required. Moreover, Schweizer Dipple was obliged to follow General Safety Order No. 18 in the performance of its work. This Safety Order is designated "Rules Governing Contractors and Their Employees." The rules covering work done by Schweizer Dipple read as follows:

"B–8. Do not ride upon, or operate engines, cars, cranes, elevators, or other moving machines, or tamper with electrical apparatus, unless authorized to do so. Never leave your regular place of work except as required by your duties.

"B–15. Never work on a crane, table or other machinery until you have notified the operator, shut off the power and secured a lock at the point where the power is turned on. No one except the man who placed it should ever remove such a sign or lock.

"B–16. Do not go onto an overhead crane runway for any purpose

without permission, and then not until the cranemen have been notified. After notifying the craneman, attach a bumping block to the crane rail between yourself and the cranes. Use the same precautions when working near the crane tracks. If this cannot be done on account of interfering with operations, Contractor shall place a man in crane cage who will act as watchman over crane operator, to prevent operator from running crane beyond a certain point which will be a safe distance from point where contractor's men are working."

This "purchase order" acquired the pipe work for the expansion program of the defendant, and that was all. Defendant made it clear, therein, that it intended to furnish whatever else was necessary to carry out the job, including the use of a crane. Schweizer Dipple had no authority to operate a crane nor did the agreement provide that such operation be within the orbit of its work.

It seems plain from this that the crane operator was, at all times, under the control of the defendant and doing its work and consequently, was not loaned to Schweizer Dipple and doing its work under its sole direction and control when the accident occurred.

The principle of law applying to this situation has been stated in many cases:

Charles v. Barrett, 233 N. Y. 127, paragraph one of the syllabus:

"It is a rule that as long as an employee is furthering the business of his general employer by service rendered to another, there will be no inference of a new relation unless command has been surrendered, and no inference of its surrender from the mere fact of its division."

Rockwell v. Grand Trunk West Ry. Co., 253 Mich. 144, paragraph 4 of the syllabus:

"Where railroad company, owning electric crane which it furnished to consignees to unload freight, paid operator, had right to discharge him, and consignee had no control over crane or operator except by way of signals to indicate direction of hoisting, operator was servant of railroad company, rendering it liable for his acts."

Larocca v. American Chain and Cable Co., 13 N. J. Rep. 1, paragraph 4 of the syllabus:

"Generally, question of whether general employer, or specific employer is master at a particular time turns upon question of who has right to exercise control over the servant, and in absence of evidence to the contrary, there is an inference that servant remains in his general employment so long as, by service rendered another, he is performing business entrusted to him by the general employer, and there is no inference that because general employer has permitted a division of control, he has surrendered it."

Gladestry, 128 Fed. Rep. 591, paragraph two of the syllabus:

"A firm of stevedores contracted to discharge and load a vessel, being required to furnish all labor and appliances except that the ship was to furnish winches and winchmen. Plaintiff, a servant of the stevedores, was injured by the negligence of the winchmen in failing to obey an order to reverse the winch. Held, that the winchman, not being under the control of the stevedores, was not plaintiff's fellow servant, so as to preclude plaintiff from recovering for his negligence."

For the same general effect see:

Bartolomeo v. Bennett Contracting Co., 245 N. Y. 66, paragraph 2 of the syllabus.

W. S. Quinby Co. v. Estey, 221 Mass. 56; U. S. Steel Corp. v. Mathews, 73 So. 2nd 239;Benoit v. Hunt.Tool Co., 219 Louisiana 380, 390; Braxton v. Mendelson, 233 N. Y. 122; Little v. Hackett, 116 U. S. 366; Nissula v. So. Idaho Timber P. Assoc., 245 Pac. (2nd) 400; Penn. Smelting and Refining Co. v. Duffin, 363 Pa. 564; The F. B. Squire, 248 Fed. Rep. 469.

Defendant maintains that Schweizer Dipple had control over the crane operator since it directed the movement of the crane by means of signals. This claim cannot be sustained. The crane was furnished by the defendant. Its function was to put the workmen on the scaffolding in position to work. Only Schweizer Dipple knew the places where the scaffolding was needed and, of necessity, it alone, was able to transmit such information to the operator of the crane. Such combined activity was no more than teamwork between two sets of workers cooperating to accomplish the work at hand.

In Standard Oil Co. v. Anderson, 212 U. S. 215, Justice Moody, in discussing a situation somewhat similar, said at page 226:

"The giving of signals under the circumstances of this case, was not the giving of orders, but of information, and the obedience to those signals showed cooperation rather than subordination and is not enough to show that there has been a change of masters."

and in Chambellain v. Lee, 148 Tenn. 637, the Supreme Court stated the law also in a similar situation as follows in paragraph 3 of the syllabus:

"An elevator boy instructed to run the elevator as directed by an independent contractor's employee while repairing the signal system held not a lent servant entirely beyond the control of the building owners, so as to absolve them from liability for injuries to the contractor's employee as a result of the boy's negligence."

Defendant contends, further, that the placing of a man at the master switch to de-energize the crane also demonstrated the control Schweizer Dipple had over the operation of the crane. In contending this, it loses sight of the fact that such procedure was in compliance with Rule B-15 of the General Safety Order No. 18 which Schweizer Dipple expressly agreed to follow. (Supra.)

It seems obvious to us that the evidence presented in this case by the plaintiff admits of no interpretation other than that the operator of the crane remained at all times in the exclusive employment of defendant and that Schweizer Dipple not only had no right to control him in the manner in which he operated the crane but, in fact, never asserted such right nor sought to direct him other than merely to point out to him the job he had to do.

Paragraph one of the syllabus in **Scharf, Admr. v. Gardner Cartage Company, 95 Oh Ap 153,** reads:

"Where an employer assigns a cane operator to assist the crew of an independent contractor on a construction project, and the crane operator, in performing such work, is under the sole direction of the independent contractor, such employer is not liable for such crane

operator's negligence allegedly resulting in the death of a member of the independent contractor's crew."

The trial court was of the opinion that this statement of the law applied to the instant case and based its ruling thereon. We believe the facts in the two cases quite dissimilar.

In the Gardner case, a crane, operator and oiler were hired by an independent contractor from the defendant owner at an agreed rental per day. The outfit was transported to the building where the independent contractor was engaged in erecting an overhead stripper crane. The defendant owner had no interest whatever in the work being done by the independent contractor. The crane was an integral part of the work of the independent contractor and was as much under his direction and control as though it had been his own equipment. The crane operator, under those circumstances, was doing the work of the independent contractor and under its sole and exclusive direction and control. Moreover, the independent contractor was being paid for the work being done by the crane and was free at all times to return the rented equipment, if unsatisfactory.

We unanimously conclude from the above that the record discloses sufficient evidence at the conclusion of plaintiff's case to make a prima facie case in support of the allegations of plaintiff's petition under the doctrine of respondeat superior and that the trial court was in error in directing a verdict and entering a judgment for the defendant.

Judgment reversed and cause remanded to the Common Pleas Court for further proceedings according to law.

Exceptions. Order see journal.

SKEEL, J, HURD, J, concur.