BENNETT, APPELLANT, v. WILSON ET AL., APPELLEES.*

(No. 6393—Decided July 25, 1961.)

*Mr. Joseph E. Ducey*, for appellant.
*Messrs. Vorys, Sater, Seymour & Pease, Mr. Charles D. Minor* and *Messrs. Lane, Huggard & Alton*, for appellees.

DUFFEY, P. J.  This is an appeal from a directed verdict for the defendants-appellees at the close of the plaintiff-appellant's case.  The principal issue is the application of the "loaned servant" doctrine to an employee of the defendant, who caused an injury to the appellant.

Appellant was an employee of the Savage Blacktop Company.  Savage had jobs to install several blacktop residential driveways.  It entered into a contract with the Romar Company, a partnership, to supply Savage with a "highlift" and an operator to work on the excavations.  Savage paid an hourly rate for the equipment and its operator, Wilson.  Romar transported the equipment to the job and back, and was responsible for its maintenance and upkeep.  The men on the job site consisted of appellant, another Savage employee, and Wilson.  Appellant was injured by the highlift at the second excavation site on that

*Motion to certify the record overruled, December 20, 1961.  For opinion on motion to strike bill of exceptions, see 112 Ohio App., 477,

day's work. The trial court did not render a written opinion. However, the record shows that the court based the directed verdict on the conclusion that the evidence showed Wilson to be a special employee or "loaned servant" of Savage, and that appellee Romar was therefore not liable for Wilson's negligence, if any.

The applicable principle of law is well established. In *Councell* v. *Douglas* (1955), 163 Ohio St., 292, the Supreme Court stated:

"1. The relationship of principal and agent or master and servant is distinguished from the relationship of employer and independent contractor by the following test: Did the employer retain control of, or the right to control, the mode and manner of doing the work contracted for? If he did, the relationship is that of principal and agent or master and servant. If he did not but is interested merely in the ultimate result to be accomplished, the relationship is that of employer and independent contractor."

"3. Where one employs another to do certain work for him, the mere right reserved by the employer to direct as to the quantity of work to be done, or the condition of the work when completed, is not a right to control the mode or manner of doing the work so as to justify the conclusion that the relationship between the employer and the contractor is either that of principal and agent or master and servant. * * *"

See, also, *Hughes* v. *Railway Co.* (1883), 39 Ohio St., 461; *Babbitt* v. *Say, Admr.* (1929), 120 Ohio St., 177; *Miller* v. *Metropolitan Life Ins. Co.* (1938), 134 Ohio St., 289; *Halkias* v. *Wilkoff Co.* (1943), 141 Ohio St., 139; *Giovinale* v. *Republic Steel Corp.* (1949), 151 Ohio St., 161. As Judge Taft commented in the *Councell case*, the difficulty is in the application of the principle.

From an evidentiary side, a number of factors would, if present, establish the status of a loaned servant. Thus, suppose an explicit contract provision giving one authority and responsibility over another's employee, or the authority to discharge that employee and substitute one's own operator on borrowed equipment. These would establish the right to control regardless of its active exercise. See paragraph one of the syl-

labus of *Councell* v. *Douglas, supra*. However, while the presence of this type of evidence facilitates a determination that an employer relationship exists, its *absence* does not establish a relationship of independent contractor.

On the other hand, certain aspects of a working relationship do not establish proof of control. The mere fact that services are rendered at the request of a man, and for the benefit and convenience of his business, does not show that he controlled the mode or manner of rendering the services. See *Councell* v. *Douglas* at page 298. Team work by the two workers co-operating to accomplish the work at hand is not proof that either had authority over the other in the manner or mode of acting. *Redmond* v. *Republic Steel Corp.* (1956), 102 Ohio App., 163, at 171.

The *Halkias case, supra* (141 Ohio St., 139), is relied upon by the appellee. The specific and decisive determination of the court in that case was that the equipment operator involved was acting outside the scope of his employment by his general employer. The meager discussion of his status as a loaned servant appears to be dictum. So far as the case dealt with the question, the court emphasized that the defendant general employer had not agreed to operate the equipment, nor to furnish an operator. In any event, the syllabus of the case simply states the general rule and the decision is not helpful on its facts. In cases such as the instant one, the problem is primarily one of interpreting the facts. Previous cases cannot therefore provide much help. The significant evidence here is that concerning the actual circumstances and conduct of the parties on the job.

Appellant staked out the area for excavation and attached guide strings to show the dimensions. When the appellee's employee (Wilson) appeared, there was little conversation. Appellant told Wilson how deep to excavate. They completed one job and proceeded to the next. Appellant's duties consisted of the staking and some handwork on the edges and shoveling of loose dirt. He also left the job occasionally to drive a truck and dispose of the dirt. During the course of the job, he indicated to Wilson if the machine was digging too deep or told him to go lower. Apparently the speed of the machine driving forward affected the cut made, and appellant

on occasion notified Wilson that he was going too "fast."

There was some conflict as to whether appellant was entitled to discharge the driver. He was not entitled to operate the machine, nor to authorize any Savage employee to operate it. Wilson testified that he was in charge of operating the machine, and that it was his job to operate it. Breckenridge, a partner in the defendant company, on cross-examination was asked if anyone else was to operate the machine. He testified, "Well, no, we didn't want anybody else to operate it." Appellee argues with some merit that this admission does not establish that appellant was not directing Wilson on where and how to operate the machine, i. e., the mode and manner of operation. We think that under the circumstances it raises a reasonable inference that Wilson could refuse to follow any specific directions given him, or modify them in execution. It must be remembered that Wilson was admittedly an employee of Romar; he was performing work that he was told by Romar to perform; he was furthering the business of his general employer by rendering services to Savage. Under those circumstances, the initial inference is that the basic relationship continued. No inference of a new relationship with Savage, and in particular with the appellant as an employee of Savage, would arise without something to indicate that Romar's right to command had been surrendered. See *Redmond v. Republic Steel Corp., supra* (102 Ohio App:, 163), at 170; *Charles, Admr., v. Barrett* (1922), 233 N. Y., 127, 135 N.. E., 199; *Larocca v. American Chain and Cable Co., Inc.* (1953), 13 N. J., 1, 97 A. (2d), 680.

Certainly the fact that during operations appellant indicated that the cut was not the proper depth is not especially significant legally. Likewise, the fact that he had authority over another Savage employee proves nothing with respect to Wilson. Occasional signaling on the speed of the machine is consistent with mere co-operation between them. The degree of control implicit in the giving of signals to an equipment operator is not necessarily sufficient to establish an employment relationship—at least without other supporting circumstances. Cf. the *Redmond case* with *Hartford Fire Ins. Co. v. Henry J. Spieker Co.* (1956), 103 Ohio App., 455.

The evidence in this case is hardly conclusive. However, as it comes to this court, the evidence must be construed most favorably to the plaintiff. We find the evidence sufficient to raise an issue of fact with respect to the question of the employment status of Wilson.

Appellee has further suggested that there is no showing of negligence, that the plaintiff was contributorily negligent, and that he assumed the risk. On the record we believe there was sufficient evidence to submit the case to the jury.

The judgment of the Common Pleas Court is reversed and the cause is remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

BRYANT and DUFFY, JJ., concur.