## Cornelius
### v.
### B.G. Danis Co.
*[Cite as 8 AOA 7]*

*Case No. 890500*
*Hamilton County, (1st)*
*Decided November 14, 1990*

*Louis F. Gilligan and Gregory M. Utter, Keating, Muething & Klekamp, 1800 Provident Tower, One East Fourth Street, Cincinnati, Ohio 45202, for Plaintiff-Appellant.*

*Matthew J. Smith, Matthew J. Smith Co., L.P.A., 121 East Court Street, Cincinnati, Ohio 45202, for Defendant-Appellee.*

*Per Curiam.*

Plaintiff-appellant Marcia J. Cornelius ("appellant") appeals from the trial court's grant of summary judgment to defendant-appellee B. G. Danis Company, Inc. ("Danis") in a wrongful death and survivorship action for the September 11, 1986, death of her husband, Eric D. Cornelius ("Cornelius").

Cornelius was an employee of Dover Elevator Company ("Dover"). In September 1986, Dover was constructing a dual elevator system in the Geology/Physics Building at the University of Cincinnati pursuant to a contract with Danis, the general contractor at the job site. Dover sent Cornelius to the construction site to work on the electrical switches for the dual (freight and passenger) elevator system. Dover also dispatched another employee, Otis Osborne, to operate the freight elevator so as to enable the other subcontractors to transport their materials throughout the building.

In order to check the wiring system of the freight elevator, Cornelius had to lean into the "pit" area of the freight elevator. Cornelius and Osborne devised a "safety procedure" whereby Cornelius would inform Osborne when he would need to enter the freight system's hoistway, and Osborne, in turn, would cease operation to the basement/pit level while Cornelius worked on the system in that area. Cornelius's death occurred when Osborne transported Cornelius to the basement from an upper level and assumed that Cornelius was temporarily entering the pit area to gather some tools to take back to a supervisor on the upper level. Osborne made several runs to other levels and then, during a "lull" in his activity, returned to the pit area to "pick up" Cornelius and spare him from "having to walk up all the flights of steps."[1] Osborne did not give Cornelius any warning of his intended action and, as a result Cornelius, who was leaning into the freight hoistway as the elevator descended, was crushed and killed.

In her complaint, appellant alleged, *inter alia*, that Osborne was a "loaned servant" of Danis and that, therefore, Danis was liable for Osborne's negligent operation of the elevator. Danis moved for summary judgment, and the trial court granted the motion.

Appellant presents a single assignment of error. The thrust of her argument is that Osborne was Danis' loaned servant. In the alternative, she asserts that, at the very least, a question of fact existed as to whether Osborne was a loaned servant of Danis. For the reasons that follow, we affirm the trial court's judgment.

The test to be applied in determining whether a servant in the general employment of one party, who has been loaned for the time being to another party, is the servant of the original employer or the person to whom he has been loaned is whether, in the particular service which he is engaged to perform, the servant remains under the direction and control of his general employer or becomes subject to the will of the person to whom he has been loaned: *i.e.*, whether the latter is in control as proprietor so that he can at any time stop or continue the work and determine the way in which it is to be done, with reference not only to the result reached but to the method of reaching it. *Halkias v. Wilkoff Co.* (1943), 141 Ohio St. 139, 47 N.E.2d 199 (superceded by statute on other grounds as stated in *Helmick v. Republic-Franklin Ins. Co.* [1988], 39 Ohio St. 3d 71, 529 N.E.2d 464); *Shriver v. M. Weingold & Co.* (Aug. 5, 1982), Cuyahoga App. No. 44305, unreported.

Where one employs another to do certain work for him, the mere right to direct as to the quantity of work to be done or the condition of the work when completed is not a right to control the mode or manner of doing the work

so as to justify the conclusion that the relationship is between master and servant. *Councell v. Douglas* (1955), 163 Ohio St. 292, 126 N.E.2d 597; *Gilmore v. Grandview Cement Products, Inc.* (1962), 116 Ohio App. 313, 187 N.E.2d 895. "The mere fact that services are rendered at the request of a man, and for the benefit and convenience of his business, does not show that he controlled the mode or manner of rendering the services." *Bennett v. Wilson* (1961), 113 Ohio App. 503, 505, 179 N.E.2d 86, 87.

The essential facts of the case *sub judice* are undisputed. Osborne was dispatched by Dover to transport subcontractors' materials on the freight elevator pursuant to a clause in the contract executed between Dover and Danis which provided that, for a fee of $390 per month, Danis could use the elevator system prior to the building's completion. Osborne was given informal verbal "scheduling parameters" by Danis project engineers Thomas Lawler and James Hess regarding the times at which certain subcontractors would utilize the elevator. Osborne was also asked by Lawler to keep "tally" of each subcontractor's hours of elevator use so that Danis could bill the subcontractors accordingly. However, there was no procedure established by Danis regarding Osborne's operation of the elevator from floor to floor, nor did Danis inspect or supervise the elevator operation at any time or instruct Osborne as to any safety precautions to undertake.

In his deposition, Osborne acknowledged that he did not follow the verbal schedule "parameters" recited to him by the Danis engineers and indicated that the "safety procedures" that were devised for Osborne and Cornelius's joint use of the hoist-way were established by the Dover employees present at the job site. Moreover, as noted earlier, Osborne indicated that Cornelius's death occurred during a "lull" in elevator activity and upon his independent decision to spare Cornelius from the task of climbing several flights of stairs.

In viewing the evidence in the light most favorable to appellant, as mandated by Civ. R. 56, we hold that Danis was entitled to judgment as a matter of law. The uncontroverted facts demonstrate that Danis is neither gave nor denied permission to Osborne to commit any of the critical acts which led to Cornelius's death, and that Danis did not provide any instruction to Dover or to any of Dover's employees, including Osborne, concerning the means of operation of the elevator system. Thus, Danis did not

control or assert a right to control Osborne's activities and was not liable for Osborne's conduct under the loaned-servant doctrine as explained in *Halkias* and *Councell, supra.* Additionally, the record is devoid of evidence indicating that Danis violated any contractual or safety provisions, or that it was required to secure permits and/or certificates regarding the elevator and its use. Accordingly, the sole assignment of error is overruled.

The judgment of the trial court is affirmed.

UTZ, P.J., SHANNON and DOAN, J.J.

---

[1] See Osborne deposition at 32.