STINNETT et al., Appellants,

v.

HALCORE GROUP, INC., dba Horton Emergency Vehicles Company, Appellee.

[Cite as *Stinnett v. Halcore Group, Inc.*, 165 Ohio App.3d 464, 2006-Ohio-504.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–239.

Decided Feb. 7, 2006.

465

Lowe, Eklund, Wakefield & Mulvihill Co., L.P.A., and Gregory S. Scott, for appellants.

Reminger & Reminger Co., L.P.A., and Matthew L. Schrader, for appellee.

Klatt, Presiding Judge.

{¶ 1} Plaintiff-appellants, Artis and Judy Stinnett, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Halcore Group, Inc. For the following reasons, we reverse and remand.

{¶ 2} Artis Stinnett ("Stinnett") is an employee of Buckeye Metal Company, a broker, processor, and recycler of scrap metal. Primarily, Stinnett's job requires him to drive a tractor-trailer loaded with the large steel bins that Buckeye provides to its customers as receptacles for scrap metal. Stinnett is also responsible for assisting customers' employees with the unloading of empty bins from his trailer and the loading of full bins into his trailer for transport to Buckeye's facility in Cleveland, Ohio.

{¶ 3} One of Buckeye's customers is Halcore, a company that manufactures ambulances and other emergency vehicles at a facility in Columbus, Ohio. On February 15, 2002, Stinnett drove from Buckeye to Halcore with a load of empty bins. Stinnett had delivered bins to Halcore previously, and a Halcore employee had instructed Stinnett to unload the bins at a certain gate at the Halcore facility. Stinnett backed his trailer to the designated gate, opened the doors to the trailer, and entered the trailer to participate in the unloading of the bins.

{¶ 4} The method for unloading bins at Halcore is unique to that facility. Normally, when delivering bins to other customers' facilities, Stinnett backs his trailer to a loading dock, he or a customer's employee slides a dock plate from the loading dock to the trailer, and the customer's employee uses a forklift to remove the bins from the trailer. The position of the loading dock relative to the trailer and the use of the dock plate allows a forklift to be driven into the trailer to access the bins located in the front of the trailer, i.e., those bins placed farthest from the trailer doors.

{¶ 5} However, no loading dock existed at the gate where Halcore instructed Stinnett to unload the bins. Therefore, Stinnett and Wayne Smith, the Halcore employee who normally assisted Stinnett, were forced to devise an alternative method for unloading the trailer. As Smith testified in his deposition, the first time Stinnett delivered bins to Halcore, the two had a "meeting of the minds" and developed a solution together. This solution called for Stinnett to push each bin toward the rear of the trailer until Smith could reach it with the load forks of the forklift. Smith would then use the forklift to remove the bin and place it nearby. When a bin caught on the trailer's pitted and uneven floor, Stinnett would hook one end of a chain to the bin and hook the other end to the forklift. Smith would drive the forklift forward, thus dragging the bin to the rear edge of the trailer. After Smith had the bin in a position where he could reach it with the load forks,

he would stop and Stinnett would remove the chain from the bin and forklift. Smith would then use the forklift to lift the bin out of the trailer.

{¶ 6} On February 15, 2002, when Stinnett arrived at the designated gate at Halcore, Smith was unavailable. A Halcore supervisor assigned another employee, Olander Hines, Jr., to assist Stinnett. The Halcore supervisor told Hines that Stinnett would instruct him regarding how to use the forklift to help unload the trailer.

{¶ 7} Using the chain and forklift, Stinnett and Hines successfully removed three bins from the trailer without a problem. Although Stinnett and Hines disagree about how it occurred, they do not dispute that, as Hines was using the forklift to move the fourth bin, the bin struck Stinnett, knocking him out of the trailer and onto the ground. As a result of this accident, Stinnett seriously injured his left knee, ankle, and foot.

{¶ 8} On February 2, 2004, Stinnett and his wife filed suit against Halcore, alleging claims for negligence and loss of consortium. After Stinnett, Smith, and Hines were deposed, Halcore filed a motion for summary judgment, in which it argued that it was immune from suit because Stinnett was its "employee" pursuant to the loaned servant doctrine. The trial court agreed, and in a judgment entry dated February 23, 2005, granted Halcore summary judgment on all of plaintiffs' claims and entered judgment in its favor. Plaintiffs now appeal from this judgment.

{¶ 9} On appeal, plaintiffs assign the following error:

The trial court improperly granted defendant's motion for summary judgment because genuine issues of material fact exist regarding whether plaintiff was a loaned servant to defendant.

{¶ 10} In their only assignment of error, plaintiffs argue that Stinnett is not Halcore's "loaned servant," and thus, the Workers' Compensation Act does not preclude Stinnett from asserting a claim against Halcore for the injury he suffered while assisting in unloading his trailer. We agree.

{¶ 11} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. Of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made.

*State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 12} Generally, employers who either pay their workers' compensation premiums or are self-insuring are not "liable to respond in damages at common law or by statute for any injury * * * received or contracted by any employee in the course of or arising out of his employment * * *." R.C. 4123.74. If an employer "lends" its employee to a customer, and that customer "control[s] the manner or means of performing the [employee's] work," then that employee is an employee of the customer within the meaning of the Workers' Compensation Act and, thus, the customer cannot be liable for any injury the employee receives in the course of or arising out of his work for the customer. *Daniels v. MacGregor Co.* (1965), 2 Ohio St.2d 89, 206 N.E.2d 554, syllabus. See, also, *Campbell v. Cent. Terminal Warehouse* (1978), 56 Ohio St.2d 173, 175, 10 O.O.3d 342, 383 N.E.2d 135 (refusing to overrule *Daniels,* supra). Consequently, for the customer, immunity under R.C. 4123.74 turns upon whether the employee is the customer's "loaned servant," which requires consideration of:

[W]hether in the particular service which he is engaged to perform, the servant continues liable to the direction and control of his general employer or becomes subject to that of the person to whom he is lent,—whether the latter is in control as proprietor so that he can at any time stop or continue the work and determine the way in which it is to be done, with reference not only to the result reached but to the method of reaching it.

*Halkias v. Wilkoff Co.* (1943), 141 Ohio St. 139, 152, 25 O.O. 257, 47 N.E.2d 199, quoting 35 American Jurisprudence, 970, Section 541.

{¶ 13} The crux of the loaned servant doctrine is control over the manner and means of the work. In the absence of such evidence in the customer's favor, "there is an inference that the actor remains in his general employment * * *." 1 Restatement of the Law 2d, Agency (1958) 501, Section 227, Comment *b.*

{¶ 14} The loaned servant doctrine does not apply if the customer is interested only in the end result of the services, as opposed to the method selected by the employee to attain that result. *Ferguson v. Dyer,* 149 Ohio App.3d 380, 777 N.E.2d 850, 2002-Ohio-1442, at ¶ 20. Similarly, if the customer's authority over the employee is limited to showing him the location of the work to be done, and does not include directing the employee on how to do the work, the employee is not under the control of the customer. *Giovinale v. Republic Steel Corp.* (1949), 151 Ohio St. 161, 39 O.O. 9, 84 N.E.2d 904, paragraph three of the syllabus. See, also, *Gilmore v. Grandview Cement Prods., Inc.* (1962), 116 Ohio App. 313, 316–318, 22 O.O.2d 149, 187 N.E.2d 895; *Redmond v. Republic Steel Corp.* (1956), 102 Ohio App. 163, 170–172, 2 O.O.2d 147, 131 N.E.2d 593.

Accordingly, "[m]ere directions as to where to load and deliver are not sufficient to create a question of fact as to control." *Cincinnati Ins. Co. v. Continental Cas. Co.* (Dec. 6, 1995), Hamilton App. No. C–940884, 1995 WL 714262, citing *Hamlin v. McAlpin Co.* (1964), 175 Ohio St. 517, 26 O.O.2d 206, 196 N.E.2d 781, paragraph three of the syllabus.

{¶ 15} In the case at bar, the evidence shows that the only instruction a Halcore employee ever gave Stinnett was to park his trailer at a particular gate at the Halcore facility. Pursuant to the cases cited above, this instruction does not evince the type of control required for Stinnett to be Halcore's "loaned servant." Halcore only directed Stinnett where to unload the trailer, not the manner and means he should use to do so. Because Halcore did not control the manner and means of Stinnett's work, he is not Halcore's employee, and Halcore is not entitled to immunity under R.C. 4123.74.

{¶ 16} Halcore, however, argues that it *did* control the method Stinnett used to unload the bins. Halcore's only evidence for this proposition is Stinnett's testimony that the "proper way" to unload a trailer requires the use of a loading dock and dock plate. Because no loading dock is available at the gate where Halcore instructed Stinnett to park, Stinnett could not unload the "proper way." Halcore maintains that Stinnett's inability to unload the "proper way" means that he, instead, used a method for unloading that Halcore mandated. However, the evidence does not show that Halcore ever mandated, or even suggested, any particular method for unloading the trailer. To the contrary, Smith testified that he and Stinnett worked together to devise and employ a workable method for unloading the trailer. From this testimony, reasonable minds could only conclude that neither Smith nor Stinnett mandated the method used. See *Bennett v. Wilson* (1961), 113 Ohio App. 503, 505, 18 O.O.2d 132, 179 N.E.2d 86 ("Team work by the two workers co-operating to accomplish the work at hand is not proof that either had authority over the other in the manner or mode of acting").

{¶ 17} Further, Smith testified that he "never told Stinnett what to do." Thus, the only Halcore employee regularly involved in the unloading of the trailer expressly disavowed controlling the manner and means Stinnett used to unload the trailer. Moreover, nothing Hines did or said leads this court to conclude that he asserted any control over the manner and means used to unload the trailer on the day of the accident. Rather, based upon Hines's testimony that he looked to Stinnett for instruction, reasonable minds could conclude that *Stinnett* was in control of the unloading when the accident occurred. Accordingly, no evidence supports Halcore's assertion that it controlled how Stinnett unloaded the trailer.

{¶ 18} Next, Halcore argues that Stinnett is its employee under the loaned servant doctrine because the delivery and unloading of the bins benefited Halcore. We find this argument unavailing. Evidence that services are ren-

dered at the request of a customer, and for the benefit and convenience of the customer's business, does not show that the customer controlled the manner or means of rendering the services. *Gilmore,* supra, at 316, 22 O.O.2d 149, 187 N.E.2d 895.

{¶ 19} Halcore also argues that Stinnett is its employee under the loaned servant doctrine because it was Stinnett's job to assist with the unloading of the bins. Halcore is correct about the extent of Stinnett's job duties. However, it was Buckeye that mandated that Stinnett assist Halcore, and every other Buckeye customer, with the unloading of the trailer. Thus, Buckeye, not Halcore, controlled whether Stinnett assisted in the unloading. Further, according to Stinnett's uncontroverted testimony, Buckeye never relinquished control over his actions by instructing him to follow the direction of Halcore employees when assisting in unloading.[1]

{¶ 20} Finally, Halcore argues that because Stinnett and Hines worked together, Stinnett and Hines are co-employees and, given this relationship, Hines is immune from suit. See R.C. 4123.741 ("No employee of any employer * * * shall be liable to respond in damages at common law or by statute for any injury * * * received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment * * *"). Halcore then asserts that because Hines is immune, it is too. This argument is wrong for two reasons. First, it assumes that Stinnett is a Halcore employee under the loaned servant doctrine, when, as we discussed above, no evidence supports this conclusion. Because Stinnett is not a Halcore employee, he is not Hines's co-employee. Second, nothing in the immunity afforded to a co-employee by R.C. 4123.741 extends that immunity to an employer. Rather, R.C. 4123.74 governs the immunity due to an employer, and our foregoing discussion addresses why R.C. 4123.74 is inapplicable here.

{¶ 21} Accordingly, because reasonable minds could only conclude from the evidence submitted that Halcore did not have control over the manner and means by which Stinnett assisted in unloading his trailer, Stinnett is not Halcore's employee under the loaned servant doctrine, and Halcore is not entitled to immunity under R.C. 4123.74. Thus, we sustain plaintiffs' assignment of error.

{¶ 22} For the foregoing reasons, we sustain plaintiffs' only assignment of error, reverse the judgment of the Franklin County Court of Common Pleas, and

---

1. This fact distinguishes this case from *Lawson v. May Dept. Store* (Nov. 27, 2001), Mahoning App. No. 00 CA 191, 2001 WL 1539161, a case Halcore and the trial court rely upon. In *Lawson,* the court held that the employee was the customer's employee under the loaned servant doctrine because he assisted in the unloading of his truck under the direction and control of the customer.

remand this case to that court for further proceedings in accordance with the law and this opinion.

Judgment reversed
and cause remanded.

BRYANT and PETREE, JJ., concur.